UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LINDA FERTIG,

                       Plaintiff,                          10 CV 8191 (RPP)

               - against -                      **OPINION & ORDER**

HRA MEDICAL ASSISTANCE PROGRAM;
THE CITY OF NEW YORK; MARITZA SANCHEZ,
DEPUTY DIRECTOR, HRA; ELVIRA PRESCOTT,
DIRECTOR, HRA; BEVERLY WATSON,
PRINCIPAL ADMINISTRATIVE ASSOCIATE, II,HRA;
JOANNE BETHEA, PRINCIPAL ADMINISTRATIVE
ASSOCIATE, I, HRA

                       Defendants
------------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.,**

On October 7, 2010, Plaintiff Linda Fertig ("Ms. Fertig") filed a Complaint ("Compl.") in New York State Supreme Court in New York County, against her former employer, HRA Medical Assistance Program ("HRA"), the City of New York, and various individuals employed by HRA. Ms. Fertig alleges that she was harassed at work and ultimately fired from her position as a city employee based on her interracial marriage, and claims: 1) employment discrimination in violation of 42 U.S.C. § 1983 and New York Executive Law § 296 ("N.Y. Human Rights Law"), and 2) intentional infliction of emotional distress under New York state tort law. Defendants filed for the removal of Ms. Fertig's Complaint to federal court on October 28, 2010.

On February 3, 2011, Defendants moved this Court for an order granting a motion to dismiss the Complaint on the grounds that: 1) Ms. Fertig is collaterally estopped from bringing her discrimination claims because of a state court prior determination on the same issue, and 2)

1

Ms. Fertig's claims of discrimination and intentional infliction of emotional distress are barred by the applicable statutes of limitations. (Def.'s Mem. at 2.) Plaintiff submitted her opposition papers on March 1, 2011. Defendant submitted its reply memorandum on March 28, 2011. This Court held oral argument on the motion on April 8, 2011.

For the following reasons, Defendants' motion to dismiss is granted.

## I. BACKGROUND

From 1983 until April 17, 2009, Ms. Fertig was employed by Defendant HRA Medical Assistance Program. (Compl. at ¶¶ 3,8.) Ms. Fertig served as a provisional Eligibility Specialist after taking a Civil Service Examination on January 30, 1993, but was ultimately never certified as a full Eligibility Specialist.[1] (Id. at ¶ 4-8.) There were repeated issues with Ms. Fertig's productivity and the error rate in her work (id. at ¶¶ 11-30), and Ms. Fertig also suffered from work-induced panic attacks. (Id. at ¶¶ 10, 13, 22.) Ms. Fertig was reassigned to less demanding work on multiple occasions. (Id. at ¶¶ 11, 14, 21.)

In November of 2005, Ms. Fertig (formerly, Ms. Reddick) married Joel Fertig. (Id. at ¶ 2.) The marriage was interracial. Fertig v. HRA Medical Assistance Program, No. 17672/09, slip op. at 6 (N.Y. Sup. 2010). Ms. Fertig alleges that her supervisor, Joanne Bethea ("Ms. Bethea"),

---

[1] Under New York law, the "Eligibility Specialist" position is classified as a competitive civil service position. In order to be appointed to a competitive civil service position, a person must take a civil service examination, meet the minimum requirements set forth in the announcement of the examination, and be placed on a corresponding "Eligible List." N.Y. Civ. Serv. Law §§ 50, 61 (McKinney's 2011). An Eligible List lasts for one to four years. Id.§ 56. After taking Civil Service Examination 2071 on January 30, 1993, Ms. Fertig was appointed a provisional Eligibility Specialist in June of 1993. On January 12, 1994, the City of New York Department of Citywide Administrative Services ("DCAS") determined that Ms. Fertig did not meet the minimum qualifications in the announcement of the examination. (Compl. at ¶ 6.) Ms. Fertig appealed to the DCAS Committee on Manifest Errors, which sustained the disqualification decision on August 24, 1994. Id. Ms. Fertig subsequently appealed to the New York City Civil Service Commission ("CCSC") on September 7, 1994. On August 23, 1999, the CCSC reversed the decision of the DCAS and found that Ms. Fertig possessed the minimum qualifications stated in the announcement of the examination. (Id. at ¶ 7.) By that date, the Eligibility List associated with Civil Service Examination 2071 had already expired. Ms. Fertig did not take any other civil service examinations after this time, but continued to work as a provisional Eligibility Specialist until her termination on April 17, 2009. (Id. at ¶ 8.)

2

began harassing her based on her interracial marital status beginning in May of 2007. (Compl. at ¶ 3.) During a discussion with Ms. Bethea on an unspecified date, Ms. Fertig alleges that Ms. Bethea suggested that her productivity and error problems might be caused by problems in her marriage. (Id. at ¶ 29.) Ms. Fertig also alleges that on another unspecified date, her supervisor, Beverly Watson ("Ms. Watson"), told Ms. Fertig that she wished she could put her "back on processing because she was very knowledgeable, but the bottom line was that if she stayed married to her present husband, the Defendants would not allow her to do eligibility specialist work again." (Id. at ¶ 28.) Ms. Fertig did not file a discrimination complaint with HRA or any other organization about Defendants' alleged statements regarding her marriage. Ms. Fertig was terminated on April 17, 2009 pursuant to N.Y. Civ. Serv. Law § 65(2) (McKinney's 2011), which limits provisional appointments to nine months if there is an eligible list of candidates.[2] (Def.'s Mem. at 4.)

On July 2, 2009, Ms. Fertig commenced an action *pro se* in New York State Supreme Court for the County of Queens pursuant to N.Y.C.P.L.R. Art. 78.[3] Ms. Fertig alleged that Defendants failed to adhere to the CCSC's 1999 determination that she was qualified as an Eligibility Specialist, that DCAS was negligent in not certifying her as an Eligibility Specialist, and that she was "discriminated upon." Fertig, No. 17672/09, slip op. at 2. The opinion states that in reply to Defendants' cross motion to dismiss the Complaint, Ms. Fertig claimed that,

> respondent failed to appoint her to a permanent position, due to negligence and discrimination; that her petition states a claim for discrimination in violation of "Article VII" based upon the failure to appoint her as a permanent eligibility specialist; that she was terminated in violation of Article VII; and that after she got married, her work

---

[2] Four civil service examinations and corresponding Eligible Lists were created for the position of Eligibility Specialist after the 2071 examination taken by Ms. Fertig in 1993, but Ms. Fertig was not terminated until the creation of a list effective from October 8, 2008 to October 8, 2012. Fertig, No. 17672/09, slip op. at 2.
[3] An action pursuant to N.Y.C.P.L.R. Art. 78 is the means by which individuals may challenge actions taken by state or local agencies or officials.

performance was criticized, and she was harassed by her former supervisor and coworkers.

Id. at 3.

Ms. Fertig's claim that Defendants were negligent in failing to appoint her as an Eligibility Specialist was dismissed by the New York State Supreme Court, Queens County on the ground that a provisional employee has no right to a position if a valid Eligible List exists, and on the ground that her claim was barred by laches. Id. at 4-5. Ms. Fertig's discrimination claim under Title VII and the N.Y. Human Rights Law was also dismissed because isolated comments are insufficient for a Title VII claim, and because Ms. Fertig did not "allege that her supervisor or coworkers made any statements about her marriage or about any members of her own race or that of her husband's race." Id. at 5-6. No oral hearing was held.

On October 7, 2010, Ms. Fertig filed the Complaint in the instant action in the New York State Supreme Court in New York County. The Complaint was removed to Federal Court on October 28, 2010.

## II. LAW & LEGAL STANDARD

Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e et seq., provides at 42 U.S.C. 2000e-2:

> (a) It shall be an unlawful employment practice for an employer –
> > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

The N.Y. Human Rights Law provides:

> 1. It shall be an unlawful discriminatory practice:
> > (a) For an employer or licensing agency, because of an individual's age, *race*, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, *marital status*, or domestic violence victim

4

> status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

(emphasis added).

In a motion to dismiss pursuant to Rule 12(b)(6), a complaint should not be dismissed unless it appears, beyond doubt, that the plaintiff can prove no set of facts which would entitle her to relief. Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993).

### III. ANALYSIS

A. Ms. Fertig's Discrimination Claim is Issue Precluded by the Prior State Court Judgment

Under New York law, issue preclusion bars relitigation of an issue when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007). A federal court must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgment emerged." Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982); 28 U.S.C. § 1738.

Prior to initiating this action, Ms. Fertig alleged in an Article 78 proceeding in New York State Supreme Court, Queens County that Defendants discriminated against her and fired her because of her interracial marriage. Fertig, No. 17672/09, slip op. at 3. Although Ms. Fertig's reply to Defendants' cross motion to dismiss alleged a violation of "Article VII," id., the state

court acted properly in construing her complaint broadly as alleging violations of Title VII and the N.Y. Human Rights Law on the basis of Ms. Fertig's *pro se* status.[4]

While Plaintiff now alleges a claim of marital status discrimination under § 1983, (compl. at 1), § 1983 is not itself a source of any substantive rights, but merely provides a method for vindicating rights elsewhere conferred. Albright v. Oliver, 510 U.S. 266, 271 (1994). In order to bring a claim under § 1983, there must be an independent violation of some constitutional or federal statutory right, in this case, a right conferred by Title VII.[5] Under Title VII, a claim of discrimination on the basis of an interracial marriage is a claim of race discrimination and not marital status discrimination. Holcomb v. Iona College, 521 F.3d 130,139 (2d Cir. 2008) (finding allegations of termination based on an interracial marriage to state a cognizable claim of race discrimination under Title VII). "Where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race." Id. While Title VII does not protect against discrimination on the basis of marital status alone, Fisher v. Vassar College, 70 F.3d 1420, 1447 (2d Cir. 1995), Plaintiff's allegations under Title VII permit this Court to treat it as a claim of race discrimination. New York's Human Rights Law, N.Y. Executive Law § 296, does allow recovery on the basis of discrimination of marital status alone.

Plaintiff thus now alleges an identical claim of discrimination under both Title VII and the N.Y. Human Rights Law on the basis of the exact same events which she litigated in state court and lost. The state court judge explicitly addressed both Plaintiff's Title VII and N.Y. Human Rights Law claims:

---

[4] A pro se complaint should be construed liberally in favor of the pleader. Pezhman v. City of New York, 29 A.D.3d 164, 168 (N.Y.A.D. 1 Dept., 2006).
[5] Plaintiff's counsel's claim that "this is a Civil Rights action, a totally different statute from Title VII," (Pl.'s Reply Mem. at 13), is thus unavailing.

>Finally, Title VII "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin (citations omitted). However, "Title VII does not establish a 'general civility code' for the American workplace. Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment (citations omitted).
>
>It is well settled that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII" (citation omitted). Here, petitioner's conclusory and bare allegations that she was terminated due to her marital status, and that her work was scrutinized and criticized after her coworkers became aware of her interracial marriage, are insufficient to allege a claim under Title VII or the Human Rights Law. Petitioner does not allege that her supervisor or coworkers made any statements about her marriage or about any members of her own race or that of her husband's race. In addition, petitioner does not allege that she was demoted or sustained any decrease in salary during her career as a provisional employee.

Fertig, No. 17672/09, slip op. at 5-6.

The state court judge explicitly found that there was no violation of Title VII and no violation of the N.Y. Human Rights law as necessary parts of the decision. Since petitioner is now alleging an identical violation of these two laws based on identical events and allegations, the first element for issue preclusion is met.

Plaintiff then argues that the second element for issue preclusion is not met because the issue was not fully and fairly litigated in the prior state court case because she argued *pro se*, no oral hearing was held, and she only discussed "Article VII" and not Title VII in her unsigned reply. (Pl.'s Mem. at 10-13.) First, the fact that Plaintiff proceeded *pro se* does not alter the preclusive effect of the state court judgment. "Despite the federal courts' generally flexible approach to *pro se* pleadings, a *pro se* litigant must be bound by the same rules of law, including preclusion law, as those represented by counsel." Carlin v. Gold Hawk Joint Ventures, 778 F.Supp. 686, 693 (S.D.N.Y. 1991). Second, an oral hearing is also not required for a full and fair opportunity to litigate. In Xu v. City of New York, 2010 WL 3060815 (S.D.N.Y. Aug. 3, 2010)

7

and Prasad v. Wassaic Developmental Center, 546 F.Supp. 679 (S.D.N.Y. 1982), for example, the respective plaintiffs had each filed an Article 78 proceeding *pro se* in state court which was dismissed without an oral hearing. The plaintiffs in each case were found to have had a full and fair opportunity to litigate for issue preclusion purposes. Finally, the fact that Ms. Fertig discussed "Article VII" and not Title VII does not mean that the Title VII issue was not litigated in the prior case. Courts must construe *pro se* complaints liberally, Lerman v. Board of Elections in City of New York, 232 F.3d 135, 140 (2d Cir. 2000), and "given any indication that a valid Title VII claim may be stated, pro se pleadings… are held to less stringent standards." Tarshis v. Riese Organization, 211 F.3d 30, 39 (2d Cir. 2000), *abrogated on other grounds*, 534 U.S. 506 (2002). The state court was required to liberally construe Plaintiff's "Article VII" claim as a claim under Title VII – it did so, and decided Plaintiff's Title VII claim on the merits. Plaintiff thus had a full and fair opportunity to litigate her Title VII and N.Y. Human Rights Law claims in the Article 78 proceeding.

Since Plaintiff's Title VII and N.Y. Human Rights Law claims were necessarily decided in a prior action and are decisive of the present action, and she had a full and fair opportunity to litigate them, Plaintiff is precluded from bringing these claims before a court again. Accordingly, Plaintiff's discrimination claims under Title VII and the N.Y. Human Rights Law, Executive Law § 296, are dismissed.

### B. Ms. Fertig's Discrimination Claims Prior to October 7, 2007 are Barred by the Statute of Limitations

Additionally, Defendants argue that any of Ms. Fertig's claims of marital discrimination that occurred prior to October 7, 2007 are barred by the applicable three-year statutes of limitations. (Def.'s Mem. at 5-6.) The statute of limitations for § 1983 claims in any given state

is borrowed from that state's general statute of limitations for personal injury actions. Owens v. Okure, 488 U.S. 235, 249-50 (1989). In New York, the statute of limitations for personal injury claims is three years. N.Y.C.P.L.R. § 214(5) (McKinney's 2003). The statute of limitations for claims under the N.Y. Human Rights Law is also three years. Id. at § 214(2). Consequently, to the extent that Plaintiff's discrimination claims arise out of incidents that occurred prior to October 7, 2007 – three years prior to the filing of the instant complaint – Plaintiff is time barred from bringing them.

Plaintiff argues that the statute of limitations should extend through her termination in 2009 because the alleged workplace discrimination constituted a continuing violation that extended until her termination. (Pl.'s Reply Mem. at 5-8.) "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files a… charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Lambert v. Genessee Hosp., 10 F.3d 46, 53 (2d Cir. 1993); *abrogated on other grounds,* 131 S.Ct. 1325 (2011). The continuing violation exception requires specific policies or mechanisms to apply, and "multiple incidents of discrimination… that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Id. Ms. Fertig alleges at most two isolated incidents of discrimination based on her marriage: one in which her supervisor opined that her problems at work may be due to problems in her marriage (compl. at ¶ 17), and one where a supervisor allegedly told her that "if the Plaintiff stayed married to her present husband, the Defendants would not allow her to do eligibility specialist work again." (Id. at ¶ 28.) No policy or mechanism of discrimination is alleged. Consequently, the continuing

9

violation exception does not apply here and Plaintiff's claims arising out of events prior to October 7, 2007 are time-barred.[6]

### C. Ms. Fertig's Claim for Intentional Infliction of Emotional Distress is Barred by the Statute of Limitations

Plaintiff also alleges a cause of action for intentional infliction of emotional distress, claiming that Defendants' treatment of her caused her depression, anxiety, and loss of sleep. (Compl. at ¶ 36.) Plaintiff did not allege this claim in her prior state court proceeding. The statute of limitations in New York for a claim of intentional infliction of emotional distress is one year from the date of infliction. Patterson v. Balsamico, 440 F.3d 104, 112 n.4 (2d Cir. 2006). Plaintiff was terminated on April 17, 2009, and commenced this present action on October 7, 2010. Even assuming that Defendants inflicted emotional distress on the Plaintiff on her last day of employment, Plaintiff's claim would still be barred as outside the statute of limitations. Additionally, Plaintiff's claim does not begin to approach the standard for intentional infliction of emotional distress requiring extreme and outrageous conduct "that goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in the community." Lavoie v. U.S., 361 Fed. Appx. 206, 208 (2d Cir. 2010). Adverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims absent a deliberate and malicious campaign against the plaintiff. Emmons v. City University of New York, 715 F.Supp.2d 394, 424 (E.D.N.Y. 2010). The harassment and adverse employment actions Plaintiff alleges fall far short of a deliberate and malicious campaign against her. Accordingly, Plaintiff's

---

[6] In addition, Title VII requires that charges brought under it must be filed with the EEOC within at most 300 days after the alleged unlawful employment practice occurred in order to be timely. If the plaintiff does not file the charge with the EEOC, the plaintiff loses the ability to recover for it. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 (2002); 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1). Plaintiff's Title VII claim is thus additionally time-barred because she did not file a complaint with the EEOC, although her N.Y. Human Rights Law claim is not barred on this basis. Alimo v. Off-Track Betting Corp., 258 A.D.306, 306-07 (N.Y.A.D. 1 Dept. 1999).

claim for intentional infliction of emotional distress is dismissed as both barred by the statute of limitations and on the merits.

## CONCLUSION

For the foregoing reasons, Ms. Fertig's claims for employment discrimination and intentional infliction of emotional distress are dismissed with prejudice.

IT IS SO ORDERED

Dated:  New York, New York

     May 6, 2011

                                      Robert P. Patterson, Jr.

                                      U.S.D.J.

**Copies of this order were sent to:**

**Counsel for Plaintiff**
Andrew James Schatkin
Law Office of Andrew J. Schatkin
350 Jericho Turnpike, Suite 105
Jericho, NY 11753
(by fax)

**Counsel for Defendant**
Michael A. Cardozo
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
(by fax)